We'll hear argument next in number 21, 22, 23. United States v. Tagliaferro. And we'll wait for counsel to come up to the front. Okay, Mr. Civella, whenever you're ready. May it please the court. My name is Jonathan Civella. I represent the appellant, Salvatore Tagliaferro. This case pits a district court's admittedly broad discretion on issues of scheduling against a defendant's Sixth Amendment right to counsel of choice. The boundary between those two competing interests was outlined in 1983 in the Supreme Court's case Morris v. Sloppy. There, the Supreme Court held that an unreasoning and arbitrary insistence on expeditiousness in the face of a justifiable delay will compromise a defendant's right to counsel. In Griffiths, this court elaborated on that standard, holding that a court need not grant— So you really have here an unreasoning insistence on expeditiousness, right? So the district court did allow the initial delay of a couple weeks to see if the counsel would improve and then said I want the co-counsel to vote up on the case so he's ready to try the case by the end of that first delay. And then there's the request for the second delay, but there was no guarantee that the first choice counsel was going to be ready by then. So the district court gave a bunch of reasons why the delay was not justified. So can you really call it an unreasoning decision? Yes, Your Honor. First of all, I'd like to point out that Morris v. Sloppy was a—or Sloppy—was a case involving appointed counsel instead of retained counsel. There were public defenders in that case. In Griffiths, this court made it a little simpler. It said that the court need not grant a continuance when doing so will cause a significant delay. The government in this case does not even suggest that the—what Your Honor just referred to as the second request for a continuance, which was Attorney Rosenberg's April 6th request to put the trial off until June 1st, would have constituted a significant delay. Did your client ever ask for other counsel? No, Your Honor. And is that essential? I don't know that it is in a claim of deprivation of counsel. I mean, here there's an issue of delay and how long and the other. But I was—you know, if—I think the case would be stronger if your client had said, I'm sorry, if I can't have this counsel and you won't delay so that I can have this counsel, I want another counsel and enough time. Judge Calabresi, I respectfully disagree. I think that the strength of this case is that Mr. Taliaferro was unwavering in his choice of Mr. Rosenberg as his counsel. This—and Gonzales Lopez— And, you know, that may be a very interesting point. I don't think we've ever held that. And maybe we should. You know, there are cases going one way or another, but I don't think we've ever held that where somebody says, this is a counsel I want and this counsel is no longer able to for an uncertain time, give me some reasons. Because, of course, the court didn't really give very many good reasons. Give me some reasons why we should wait longer. Your Honor, the question of indefinite delay would be an interesting one for a decision, but it is not an issue in this case. Mr. Taliaferro never requested an indefinite delay. No. He asked the delay until such time as one would find whether this person was able to come. And I don't know whether that's— So the request to June 1st was a request that said, I hope to be better by June 1st, but it wasn't a guarantee, right? Your Honor, I think that's giving short shrift to Attorney Rosenberg's representations. His letter— Well, actually, so let's just do it this way. So let's just deal with the hypothetical that Judge Calabresi raises. So let's say it was an indefinite delay. Let's say the request was, I want Rosenberg. He's my only choice. I don't know when he's going to get better, but he's my choice for counsel, and so I want a delay until he's better. Would the district court be obliged to grant that request? Under Griffiths, the answer is no. That's similar to the position that the defendant— Okay. So then if he makes a request that says, I want a delay until June 1st, and I don't—and this is a hypothetical again. I'm not saying this is necessarily the fact. I want a delay until June 1st, and I don't know if I'll be better, but I hope to be. Why is that different? Is the district court obliged to grant that request? Your Honor, it's a much closer question. I think that the nature of the human condition is such that whether or not the attorney gives a guarantee that I'm going to be here on June 1st or says I'm going to make every effort to be here on June 1st— I think maybe the difference is if there's good reason to think that the attorney will be ready by June 1st, and it's not a significant delay, maybe the district court is obliged to grant it. Is that your position? I think that in a case like this where you're dealing with an experienced attorney who's making a representation to the district court judge who, to be fair, had made it clear that he wanted to get this case rolling, when he says, I believe I will be well enough to proceed on June 1st, he didn't take that representation lightly. It meant that he in good faith believed that he would be there on June 1st, and I emphasize that even if an attorney who was in perfect health made that representation, he'd be unable to guarantee that he would be there June 1st because that's just the nature of things. Does it matter that the district court gave this instruction to counsel when it did the earlier delay until April 20th that said, look, I'm going to give you the delay for a couple weeks, but it's on the condition that Mr. Bachrach gets up to speed and so on so that we're ready to proceed on April 20th? Your Honor, I think it does matter. I think that the court's response on March 31st demonstrated the court had no intention of brooking any delay in order for Mr. Rosenberg, who was Talia Farrell's counsel, to get back. Why didn't the district court make that decision? I mean you're saying the district court just decided, look, I can accommodate a delay of a couple weeks, but I don't think a further delay is warranted. Your Honor, I think that in this case there was no question that Mr. Rosenberg would be unable, at least on April 6th it was unquestionable that he'd be unable to proceed on April 20th and that that was a justifiable reason. The man fell in his house, he was hospitalized, he was recovering on painkillers, et cetera. So I think that at that point it becomes a question of the defendant's constitutional right to counsel of choice, which, as we know from Gonzales-Lopez, is a subjective choice of whomever the defendant believes to be the best attorney. Right? Pitted against the court's scheduling prerogatives. And in this case those prerogatives were totally ethereal. This wasn't a case where the court said, no, I've got a three-month trial on Croatian sovereignty scheduled for June 1st or the prosecutor had a similar conflict. This was a case where the court simply didn't want to put off the case any further. How do we, can I just ask you, how do we factor in, in looking at the reasonableness question, the fact that the second counsel was in fact very involved in the case and that a new additional counsel was appointed at Mr. Tagliaferro's request? Does that not weigh perhaps in favor of the reasonableness of the district court's decision? Your Honor, where the issue is, is retained counsel of choice, I think the answer is no. And I'd just like to say that there was, this case, as I said before, is unusual in that Mr. Tagliaferro was adamant that he chose Mr. Rosenberg. He told the court, I retained Mr. Rosenberg. I picked Mr. Rosenberg. I did not retain Michael Botrock, who was the secondary attorney that you just spoke of. Although I like him and I think he's a decent guy, he's not the attorney I retained. I retained Mr. Rosenberg. And he goes on to say that Mr. Rosenberg is the one that I've been speaking to multiple times a week during the 22-month pendency of the case at that point. So this was right in the heartland of the Sixth Amendment right to counsel of choice. Well, it is, but for the peculiar thing of saying this is the person I want and I don't want to go to trial without this person really regardless of time. He didn't say something like, okay, June 1st, fine. If not, I want a new lawyer. And I'm not sure that makes the difference, but it is a little different because what you're saying is that the Sixth Amendment right to trial, right to counsel, allows you just to say I want this counsel regardless of when this counsel is available. And that's ‑‑ I'm not sure that's this case, but it's ‑‑ Your Honor, if I may address this question. I see I'm out of time. Judge, I think that in this case, one of the facts that makes it unique is that Mr. Taliaferro had been just two or three days before his attorney's injury had come into court and said, I want to go to trial. You know, he was unhappy that the thing had been delayed. There is no suggestion of delay. I mean, one can look if somebody unveiled and therefore wants delay and so on, but there is no suggestion here of doing this in order to delay. No, I don't think that. And that's the first part of my point. The second part of it is that on March 31st when they came in, it was literally less than 24 hours after Mr. Rosenberg had been hospitalized. So at that point, they didn't know if he had a bruised shin or if he had had a stroke. So at that point, they said Mr. Taliaferro's position was I want to see, I want this guy to be my attorney when he gets better. There was no certainty at that point that that would be a significant delay. And, in fact, it turned out on April 6th that the delay would be a modest five weeks. And so under those circumstances, Mr. Taliaferro's choice, which was clear, was to proceed with the attorney that he had retained. So the question of – So the district court also says, look, I don't get to control the scheduling of trials entirely. There's an assignment committee and so on. I mean, might it be that the district court was worried about a much further delay if they didn't proceed with the scheduled trial? Your Honor, I think that that is what the court's worry was. I think that that, at least here, falls under the – it's certainly not a risk of significant – it's certainly not a significant delay. It's an unquantifiable risk of a certain delay. All we know about the scheduling committee is that on March 31st, when the judge said, I want to put this thing off for a couple weeks, let me talk to the scheduling committee, he was able to move the case quickly from April 5th to April 20th. So we know that the committee was flexible enough to allow that change. It may have been that a June 1st trial would have been impossible, but there's no indication of that on the record. It doesn't seem like the district court explored that possibility because the court was insisting on expeditiousness. And under the circumstances of this case, particularly because of the way he framed his order as a not – as if Mr. Taliaferro hadn't been deprived of his counsel of choice, that was an abuse of discretion. Thank you. Thank you very much, Mr. Civella. We'll hear from you again on rebuttal. Let's turn to the government. Mr. Schaffer. Good morning, and may it please the court. My name is Jared Schaffer. I'm an assistant United States attorney in the Southern District of New York, and I represent the United States in this appeal, as I did in the trial court below. I'd like to pick up right where the court left off with my friend. The first is the suggestion that this was not a request for an indefinite delay. There was no way that Judge Crotty could know at the time that he was facing this adjournment decision how long that delay would be. In particular, I would point the court to A35 and A36 – or A37 of the record, which are the letters that were submitted ex parte and under seal by the attorneys in this matter. Both reference the fact that it could take up to eight weeks for Mr. Rosenberg to heal from these incidences. Could the court not have said, if Mr. Rosenberg is not well by June, whatever that date was, are you ready to proceed with the counsel that you have now? Or are you so determined that you will have either Mr. Rosenberg, or if he can't do it, some other counsel of your choice, so you can name that counsel now? And if June 1st comes and Mr. Rosenberg isn't available, we can then proceed with the trial then. That is, couldn't the court have perfectly sensibly said, we've got to go to trial within a reasonable time, and June 1st is not that great a delay given what has happened before, and I want to be sure that we don't get into a situation where you then ask for new counsel and further delay. And wasn't that erroneous of a district court not to have done that? I'm not sure it raises to Sixth Amendment or whatever, but isn't that what a sensible court would respect? A district court is always sensible. I've never been a district judge, but isn't that what a sensible court should have done? No, Your Honor, and that's for two reasons. The first, initially, I'll acknowledge your point, which I agree with, but the standard here is abuse of discretion. So whether or not another judge might have made a different determination is not the question. It's whether Judge Crotty abused his discretion. And I don't think the district court could have done what you're suggesting for two reasons. One is that there was no guarantee that the court could set a June 1st date for this trial. These trial dates during this period, just for the court's benefit, were very hard to come by. This was in the midst of a pandemic. The court was coming off of two district-wide orders that had suspended all trials due to the COVID-19 pandemic. I understand that, but the court didn't say that. Now, how much are we supposed to, in a situation where the court didn't really give an explanation, look and see whether the court could have given an explanation? Now, you know, again, the case might be different, and it may be that discretion means that we just assume that that's what the court was doing. Again, I would have been a little happier if the court said, hey, you know, the problem with June 1st is that I've got this crazy Croatian case that's sent back to me, and that's going to take 20 years. I think not, Your Honor. First of all, I would push back slightly and respectfully on the suggestion that the court did not say anything here. During the conference that was held, where the court actually granted a two-week adjournment, it talked about the assignment panel. The only purpose for the assignment panel was to handle the fact that courts could no longer schedule their own trials because of the COVID-19 pandemic. All parties were well aware that this case had been adjourned multiple times over the course of a year because of the COVID-19 pandemic. And in fact, Mr. Rosenberg and Mr. Bachrach had filed a joint motion requesting to withdraw if the case were not further adjourned in a few months earlier. So I don't think that it's true that there was no justification or no explanation for the court's adjournment. I would also note that at that same conference, the government put forth its concerns. And my friend is not correct that the government gave no reason why this adjournment would be problematic. Not only would this impact the court's calendar, it affects the entire administration of justice because there were witnesses, lawyers, and jurors, all of whom had to be assembled in the midst of a pandemic. I'm sorry. I just wanted to – but don't we also have to factor in – you've been talking about the question of sort of the scheduling and the discretion, but it's also weighed against the idea of if this is in fact a violation of the constitutional right to choose counsel, then we're not talking about if, in fact, that's what is at issue. We're not talking about discretionary abuse of discretion standard if, in fact, there's a constitutional violation here. I mean, how do we – I guess I'd like you to address sort of beyond just was this reasonable as a scheduling matter, does – is this, in fact, touch on the right to counsel of choice? Sure, and thank you, Judge Lee. I think that's an important point here is that this case is not about the exclusion of Mr. Tagliaferro's counsel of choice. There was no determination or order excluding Mr. Rosenberg. This case is purely about whether the case had to be adjourned to satisfy the qualified right to counsel. And as this person pointed out in Griffith and in Gonzales and the Supreme Court in Gonzales, Lopez, and Morris v. Slappy, this is a qualified right that can give way to the needs of the court's calendar and its need to balance the fair administration of justice against all of these other concerns. So while it is important to ensure that a defendant can have their choice of counsel, that is a qualified right that must be balanced against all of these interests, and it's not something that simply supersedes. And this court has made clear in Griffith that the appropriate standard to be weighed is abuse of discretion. I would point out that while my friend has indicated that Mr. Tagliaferro was always adamant that he wanted this case tried by Mr. Rosenberg, that's not actually reflected in the record until immediately prior to trial when Mr. Rosenberg was no longer available. Mr. Bagrach appeared in this case several weeks after the indictment was filed. He participated in every phase of it. Why would he have had to represent that at an earlier time? That was the only time at which it was possible he wasn't going to get Mr. Rosenberg in the trial. That's true, Your Honor, but the record also indicates that, in fact, the opposite was true. Okay. What's that? So initially when the trial was scheduled, defense counsel made a motion to request that it be adjourned because Mr. Bagrach was not available on that trial date, but Mr. Rosenberg was. Mr. Rosenberg's letter to the court also indicated that he always thought that it was a two-lawyer case and that Mr. Rosenberg was not directly taking the lead with this. And the government's interactions even prior to this instance with Mr. Bagrach or with the defense counsel were always with Mr. Bagrach about evidentiary issues, 3500, all these fact-dependent issues, all of the legal issues in the case. Those were all handled by Mr. Bagrach. And so it's a little bit of hand-waving, I think, to suggest that the old— Are you saying we should infer from that that actually Mr. Tenley and Farrell was lying and he really preferred Mr. Bagrach? No, Your Honor. I think it may be true, and I have no way to know one way or the other whether Mr. Tenley Farrell, in fact, preferred Mr. Rosenberg over Mr. Bagrach. My point is simply that it is not accurate to say that Mr. Bagrach was merely some assistant who was never retained by the defendants. So I take it your argument there is not go to Mr. Tenley Farrell who's lying or not, but what the court in making its decision saw about what it was doing when it was delayed, that having Mr. Rosenberg not that clearly defined as the lawyer that was wanted, the court could act in the way it did in its discretion. I take it that's what you're saying. That's correct, Your Honor. And I would add to that the fact that Mr. Bagrach represented to the court that with Ms. Kelman's assistance, who was appointed at Mr. Tenley Farrell's request, who did, in fact, try the case ably with Mr. Bagrach, and Mr. Bagrach represented to the court that with her assistance he would be ready to try the case. And, in fact, they were. But he had been ordered by the court to be prepared to try the case, right? So it's not obvious that he's saying this would be an ideal situation. He's just saying in compliance with the district court's order, I'm going to be ready if I have this extra help. I don't think so, Your Honor. I think having been told that the case was going to proceed, Mr. Bagrach understood he couldn't ask for another adjournment. But nothing about that suggests that he would make the affirmative representation that with Ms. Kelman's assistance he would be ready. That is an affirmative declaration by the district court. But the district court did say when it delayed until April 20th, I'm not going to accept any application based on the idea that you're not ready. So the district court did basically tell him, you can't tell me you're not going to be ready on April 20th, right? Yes, Your Honor. That's correct. But that was also reasonable under the circumstances, given that Mr. Bagrach had been involved in the case for two years, that Mr. Bagrach had tried half a dozen criminal trials, that he was on the CJA panel, which has a rigorous application process, that Mr. Bagrach – Okay, I think we have that argument. We haven't talked about the sufficiency of the evidence idea, so maybe I can just ask this question about the theory by which Mr. Tagliaferro violated the statute. And so the question is, he took the ID cards and delivered them to other – to people who did not deserve to be in the union. That's the idea? So Mr. Tagliaferro didn't personally do that, but he caused it to be done. He caused it to happen. I understand. But that's the theory. Yes. So it actually doesn't matter that there were bribes involved, right? No, it doesn't. So if he wanted to do it as a favor to these people but still delivered the ID cards, there would be a violation of the statute. That's correct. The statute does not require falsification. But if he had taken bribes and got them on the membership rolls but never gave them the ID cards, so never delivered any property, then there would be no violation of the statute. That's correct because there would have been no conversion of actual property of the union. He still would have violated the honest services and the conspiracy charges. Let me just tell you my problem on that. I don't think Robinson makes very much sense, frankly, our case. I think Price is more powerful. On the other hand, Robinson is our case, Price is not. So the question to me is, is this case, in fact, sufficiently different from Robinson so that we can say properly, hey, Robinson was stretching and we go in some other direction or the sense of Robinson is whether they actually signed or just vouched and so on is not the essence of that case. And so if we are to be fair, Robinson settled the issue. Two responses, Your Honor. The first is that if you are concerned that Robinson and Price are different and you have concerns about Robinson, my second point is to pitch you that Robinson is correctly decided and you should follow that. Well, I don't care whether it's correctly decided. It's binding on me, so it's fair. I'm not going to – I can tell you I don't like it, but that doesn't – that's a lot of our law I don't like. But I think then going to the crux of your question, it doesn't matter in this case, Your Honor. Even if Robinson did not exist and Price were controlling, which it's not, this case still falls comfortably within that realm, and that's because in order to issue these union cards, Mr. Tagliaferro had to cause fraudulent and false statements to be made. These people were not eligible to become union members. Instead, Mr. Tagliaferro represented that they were. That was against the union policy. That was false. That was a fraudulent representation. That falls well within Price. So even if you're looking to Price, this case still falls. It has to be conversion of some kind of property, right? Yes. So what is the false statement? So the interpretation of Robinson that's in Price is that it became converted because he used it for his own purposes by putting the false information on it. Was this false information – the false statement you're talking about, was that reflected on the ID card? It wasn't reflected on the ID card, but it was necessary to get the ID card. So what's the import of the false statement? How does that fit into the statute? So one of the references in Price describing Robinson indicates that in this case, in Price, where they simply accepted application fees in the normal course of the application process, there was no false or fraudulent representation. And it partially – Yeah, but the reason why the Price court is talking about that is because it's saying that the way we understand Robinson is the forms were converted to the defendant's own purposes because he used it as a vehicle for conveying his false information. But you're saying false statements were made here, but you're not saying that the false statements were made on property of the union, are you? Not that false statements were made actually on the property because these are kind of formally issued cards. I mean, I don't know. Maybe you could say that because, you know, I guess the card does represent the idea that the person is a qualified member of the union. Maybe your position is that actually the union card is a vehicle for a false statement. That's correct, Your Honor. Is it correct? It doesn't seem to be what you were just saying. So we're not saying that the actual false statements that were made by Mr. Tagliaferro actually made in terms of text messages or things like that are reflected on the union cards, but the union cards themselves do reflect the false representations that were made in that these people were eligible for admission to the union. They were not. And Mr. Tagliaferro converted those cards to his use by dangling them in front of people and saying, hey, I can get you this if you pay bribes and you can get this even if you're not eligible to actually get these cards and be in the union. And that's exactly what happened here. But I don't think that the court has to grapple with that question because that comes from Price. I do think that this case falls comfortably within the realm of Price. But Robinson makes clear that the question that the court should be looking at is whether the use of the property was authorized or would be ratified by the union. Right. So even though the Price court thought that Robinson was about using the property as a vehicle for a false statement, Robinson just sort of says as long as you're using the property for your own purposes in a way the union wouldn't like, it's conversion. Exactly, Your Honor. And I think that's correct. I think that Price, in fact, didn't necessarily cast Robinson in that light. I think they noted that there were no false or fraudulent representations. But I'm not sure they construed Robinson so narrowly. And I think that Robinson is correct in looking to authorization and ratification because this is not a statute about false representations. This is a statute about abstracting and converting union property. It's about unjustification. It's not converting union property. I mean, is it a problem that you're really going after him for extracting bribes and that you say, oh, but, aha, you, like, transfer this piece of cardboard and plastic to the people from whom you're taking bribes, and therefore we're going to get you on conversion? Doesn't it seem like you're not actually going after him for the thing that Congress criminalized in the statute? No, Your Honor. I think the statute criminalizes conversion of union property, which is what they did here in taking the union cards themselves, which represent all of the union benefits that you can get from being in the union. It gives you access to jobs. It gives you access to the resources of the union. The separate charges of conspiracy and honest services fraud directly target the bribe-receiving. In connection with the conversion of union property, the bribes are proof that he was using these improperly and against what the union would authorize, that the union would actually object if it knew that he was accepting bribes and distributing the cards in this way. What you're saying is that Robinson interpreted the statute your way and that once it is interpreted your way, it covers this as well. No, Your Honor. I think that Robinson read the statute correctly and that our case clearly falls within Robinson, but that even if you read the statute as my friend says Price read the statute, our conduct still falls well within the work in the statute as well. Okay. Thank you very much. Actually, just one question, Mr. Schaffer, on the forfeiture issue. Yes, Your Honor. I guess two things. One, with regard to the district court clarifying that Mr. Tagliaferro and the co-defendant were jointly and severally liable. It doesn't appear that that clarification came at DeFalco's sentencing. As the government suggested, it would make clear. I just want to confirm, though, that your position is that they are jointly and severally liable, and so, in fact, Mr. Tagliaferro is not liable for more than the, I guess, 146,000 remaining. Is that the government's position still? Yes, Your Honor, and thank you very much for giving me the opportunity to address that. The government's forfeiture arguments fall in two buckets. The first is whether, under Honeycutt, Mr. Tagliaferro is properly responsible for all of the proceeds of the scheme abstractly. We stand by those arguments that are in our brief because, under Honeycutt, we believe that he is. But with respect to the joint and several liability issue, we agree that while the district court indicated that that would be made clear at DeFalco's sentencing, it was not, and for that reason, we think that this case is now, in that respect only, similar to Tanner and could be remanded solely for the purpose of having the district court clarify in its forfeiture order with respect to Mr. Tagliaferro. Well, clarify specifically this much money is there, and therefore this person isn't liable for that much. I don't think the district court would have to go that far, Your Honor. Simply remanding, as this court did in Tanner, to say that Mr. Tagliaferro's forfeiture judgment is joint and several with Mr. DeFalco would be sufficient because the government has already seized the amount of money that was at Mr. DeFalco's house. That satisfies more than half of the $296,400, and that would mean that legally then. But the government's position is you're not going to collect more than the $146,000 from Mr. Tagliaferro. Correct, Your Honor. So what's your objection to our saying that directly? I just want to clarify, Your Honor, that I think that in terms of actual forfeiture, Mr. Tagliaferro is appropriately made responsible for $296,400. Now we all know how much he is responsible for now, don't we? Yes, Your Honor. So do you care whether we say it or tell the district court to say it? If this court were to clarify that the outstanding obligation is only the remaining amount, that's fine. The only thing that I would urge the court to do. You don't want us to see something that can be cited out of context in another case. Exactly, Your Honor. Why wouldn't it be enough to say that any error is harmless because he's only responsible for the $146,000 outstanding? And if it turns out the government tries to collect more than that, he can come back to court because the basis of our decision is this representation. Wouldn't that be enough to say that there's not an outstanding issue here? I also think that's sufficient, Your Honor. The government has recommended in the district court and here that we will not attempt to collect more than the amount of proceeds that the district court determined. If the court had any concern, however, because this case is similar to Tanner in that respect only, we would be fine with a remand solely for the purpose of making clear that that forfeiture amount is joined in several. Thank you. Okay, thank you very much, Mr. Schaefer. We'll turn back to Mr. Sabella on rebuttal. Thank you, Your Honor. I'll try to be as brief as possible. First, to just sort of cap off the argument about the choice of counsel, I think it's clear that had the district court granted Mr. Rosenberg's April 6th request to adjourn to June 1st, Mr. Taliaferro either would not have a right to counsel argument or his argument would have been much, much less substantial. And that's because this is a fact-based analysis, and the fact that the judge gave those extra five weeks would have showed quite a bit more. You see, the problem is this. If the question is right to counsel, that's a structural error, and then we don't look to harmlessness. If the question is instead a right to an adjournment, that isn't a structural error. And then you say a right to adjournment deprived him of counsel, and so we are in debt. But the question is, was the mistake one that rises to something which is a structural error? Your Honor, that's a good point, and I take it. And from reading the cases, the only way I can interpret them, because that same issue would be present in any case that deals with this issue, right? They say that there is no deprivation of the right to counsel if the court is reasonably accommodating of the defendant's choice. Even though we don't look to harmlessness, if it's a structural error, if it gets constitutional rights, the court is entitled to balance the right against the efficient administration of the courts, right? So we're going to do a reasonability analysis. So it might not be whether it was harmless to him, but the question is whether the district court had adequate reasons for not counseling or countenancing a further delay. Right. I think that the defendant's right to counsel of choice entails his entitlement to the courts accommodating his choice to a certain extent. Right. And it falls to this court to say one exception. The accommodation is not unlimited, right? Exactly. So you have to decide whether this was a reasonable, these were reasonable limits or not. I believe that's the court's task in this case. Moving briefly to the issue of the 501C conviction, I think that Robinson could be distinguished on the grounds that in that case, the forms in question determined the union members' seniority or the level of priority that they were given in being assigned shifts, so there was a coveted assignment that was being sold. In this case, like Price, there really is no question. I think the government put it to the jury this way at closing argument. The property in question was literally the piece of paper and cardboard that contained no misrepresentation that actually entailed no benefit to the people who received them because they didn't have union jobs. And that was the version. But then if you have the card, can you show up at a work site and so on and try to get hired and show that you're a member of the union? Your Honor, the government's position at trial was that, of course, you had to have a union card to get a union job, right? Right. But if you didn't have a union job, you couldn't get a union card, right? That was how they presented it. So you already had to have they said that you already had to have a union job. Well, to be admitted to the union, you had to have a job, but then you can get further jobs, right? These are like contracting jobs. Right. So you have to have a union job to get admitted to the union, and then you can get further. You're eligible for the job you already had and any further union jobs after you have it. There was a factual issue as to whether or not that was actually the case. But, again, I don't think the court needs to go that deep into it. Robinson was about a tangible benefit in the seniority and the scheduling priority. Well, that's why Robinson was dealing with whether this actually was property, right? Robinson says that it was valuable. In terms of whether it's actual or actually conversion, right, it says, well, they turned the forms to their own purposes in a way that benefits the defendant and not the union. His action was not authorized, and presumably the union and its membership would not have been made known, right? So the conversion is over just turning it to your own purposes as opposed to the purposes of the union in a way the union would not approve of if it knew all the facts. So is your position that there isn't a lot of value attached to the cards, that it's not even property? Your Honor, I think that my position is that in Robinson and, you know, I can't, you know, it's not my business to justify or try to attack the case. It doesn't need to be overturned. But there was something like transubstantiation going on there, that the form that was for the seniority somehow embodied this valuable union right to determine who got what jobs in priority, right? That was sort of the work in here. Probably because he's using the form to serve the purposes of the scheme by fraudulently, you know, entering people into the union. But isn't that the same thing that happened here? Isn't Taliaferro taking the card and giving it to somebody who's not entitled to have one and therefore furthering his scheme to get bribes in a way the union wouldn't appreciate if they knew that the person wasn't qualified to be a member of the union? Your Honor, there's really no question, and I believe it came out of trial, that the Sandhogs were eligible to be carpenters, right? There was a question of whether there was a bureaucratic requirement that they submit a letter of intent. You're saying they're eligible to be carpenters, but they might not have met the eligibility requirement to have the employment. Right, that's what the government's suggesting. And there was testimony. I understand that they got rid of the letter of intent requirement, but then there was testimony from the special master who said that, but, you know, they still were making sure that the employment requirement was satisfied before they admitted people into the union, right? So the union still had it. And the jury could have credited that testimony. Yes, I agree with you. Yes, I agree. The jury could have credited that testimony, but it's still the fact that it remained that this was just a union card and that it didn't have the same value as the seniority determination in Robinson and there was no misrepresentation on the face of the union card, which the court in Price found to be significant or lack thereof. Do you want to say one last thing about the forfeiture? Yes, Your Honor. I was just collecting my thoughts. I believe that the appropriate course in this case, I think that the government suggested that the court could delve into the issue of whether Honeycutt, the rule in Honeycutt, there's an exception for a leader. I think that that would border on an advisory opinion in this case. The government's made the representation that it's already collected $145,000. Therefore, the remaining forfeiture amount is half of what is now on Mr. Taliaferro's judgment. I think the appropriate course would be to remand to the district court with instructions. Would you have any objections to our simply saying this is the amount that is left and this is what should be collected without remanding? No, Your Honor. That's what I'm suggesting the court do. Okay. Thank you very much. Thank you very much, Mr. Savella. The case is submitted.